UNITED STATES of America, Appellee,

v.

Noel ALVARADO and Mayra Sanabria, Defendants–Appellants.

Nos. 347, 444, Dockets 88–1319, 88–1320.

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1988.

Decided Aug. 9, 1989.

John P. Cooney, Jr. and Charles E.F. Millard, Jr., New York City for defendant-appellant, Noel Alvarado.

Robert Koppelman, New York City, for defendant-appellant, Mayra Sanabria.

Nelson W. Cunningham and Kerri L. Martin, Asst. U.S. Attys. for S.D.N.Y., New York City (Rudolph W. Guiliani, U.S. Atty. for S.D.N.Y., New York City, of counsel), for appellee.

Before VAN GRAAFEILAND, WINTER and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendants–Appellants Noel Alvarado and Mayra Sanabria appeal from judgments of conviction entered upon a jury verdict in the United States District Court for the Southern District of New York,

Inzer B. Wyatt, *Judge.*[1] The indictment charged both defendants in three counts: count one—conspiring to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (1982); count four—possessing approximately five ounces of a mixture containing cocaine, with intent to distribute it, in violation of 21 U.S.C. §§ 812 (1982 & Supp. V 1987), 841(a)(1) (1982), 841(b)(1)(C) (1982 and Supp. V 1987) and 18 U.S.C. § 2 (1982); and count five—using and carrying firearms during and in relation to the above crimes in violation of 18 U.S.C. § 924(c) (1982 & Supp. V 1987).[2] The jury convicted Alvarado on counts one, four and five, and Sanabria on counts one and four, but acquitted Sanabria on count five.

On appeal, Sanabria argues that her waiver of *Miranda* rights was coerced, and the resulting statements should therefore have been suppressed; and that the redaction of her statements, limitation of her cross-examination, and denial of her motion for severance deprived her of a fair trial. Alvarado contends that the introduction in evidence of testimony relating Sanabria's statements (after redaction by substituting the words "another person" for Alvarado's nickname) deprived him of a fair trial; that his motion for severance was improperly denied; that there was insufficient evidence to convict him on count five; and that his conviction on count five must be vacated as inconsistent with Sanabria's acquittal on that count in view of the identity of the evidence against them.

We affirm.

### Background

The evidence at trial established that Hector Colon, a confidential informant for the Bureau of Alcohol, Tobacco & Firearms ("BATF"), made several visits to defendants' apartment at 2329 First Avenue in New York, New York in order to purchase cocaine. On the evening of November 10, 1987, Colon proceeded to the second floor apartment at that address, where he purchased a small quantity of cocaine from a youth named Alex for $45.00. On the evening of November 13, Colon returned and was met by defendant Mayra Sanabria, who opened the door. Alex then appeared and sold Colon 2.5 grams of cocaine for $125.00. On November 17, Colon returned for the third time, carrying photographs of two guns that he offered to sell. Alex answered the door, took one of the photographs, and sold Colon two packages of cocaine for $50.00. Colon observed Sanabria inside the apartment on this visit.

Colon returned to 2329 First Avenue on November 18 for the fourth time, where he was met by Alex in the front of the building and told that there was nothing to sell, and that he should return later. Upon Colon's return fifteen to twenty minutes later, Alex informed Colon that he would have to buy from one "Choco," who was selling for Alex in the street. Colon then purchased a bag of cocaine from Choco. The fifth time Colon returned, on November 19, defendant Noel Alvarado answered the door to the apartment. Alex immediately came to the door and directed Colon to buy from Choco in the street. Colon thereupon purchased two bags of cocaine from Choco.

On the evening of November 20, 1987, Colon returned with several BATF agents who had a warrant to search the apartment. After knocking and receiving no response, the agents broke in. Alvarado, Sanabria and Alex were found in the apartment. The search of the apartment revealed 108 grams of cocaine, glassine bags,

---

**1.** The government filed cross-appeals, 88–1355 and 88–1366, challenging the district court's imposition of sentences without applying the Sentencing Guidelines after finding the Guidelines unconstitutional. The cross appeals were stayed, upon consent of the parties, pending the resolution of *United States v. Martinez,* 873 F.2d 1436 (2d Cir.1989) (mem.), were not presented to this panel, and are not considered in this opinion.

**2.** A third defendant, Charles Shannon (a.k.a. "Choco"), was also charged in count one. In addition, Shannon was charged separately in counts two and three with connected drug-related crimes. Prior to trial, however, Shannon became a fugitive and was severed as a defendant.

triple beam balance scales, heat sealers, strainers with a residue of white powder, a loaded pistol in a drawer, a bullet-proof vest, and a locked safe containing two loaded handguns and $2,980.00. The agents also recovered numerous papers and records, including Alvarado's birth certificate, Sanabria's automobile title, Alvarado's address book, two statements from a Holiday Inn in the name of "Mayra Alvarado" listing 2329 First Avenue, New York, New York as her address, and a Consolidated Edison bill for the apartment in Alvarado's name.

Alvarado, Sanabria, and the other alleged members of the conspiracy (Alex and Choco) were brought to BATF headquarters and questioned. Upon being taken from her holding cell, Sanabria waived her *Miranda* rights and was questioned for approximately thirty to forty-five minutes in the presence of three agents. Sanabria made statements which were presented to the jury by a BATF agent as follows:

Q. During that interview did she state to you in substance that she had told *another person* not to sell to the confidential informant because she thought she had seen him with a shield and thought that the confidential informant was a cop?

A. Yes.

Q. During that interview did she also state to you in substance that she had helped *another person* package the coke?

A. Yes.

Q. During that interview did she also state to you in substance that she knew the guns were in the apartment because she had played with them?

A. Yes.

Q. During that interview did she also state to you in substance that the main individual who supplied *another person* never dropped off the cocaine but would send one of the neighborhood teenagers as the runner?

A. Yes.

Q. Agent Polak, at or about the time of the interview was anything recovered from the defendant Sanabria?

A. Yes.

Q. What was that?

A. We asked her if she had any personal property besides jewelry and she displayed currency, United States currency. It was counted to be about $500.

She stated that she had obtained—

\* \* \* \* \* \*

A. That she had obtained the money from *another person* by the holding cell.

Emphasis added.

During the actual questioning at BATF headquarters, Sanabria named "Scoobie," rather than "another person," in the four emphasized portions of the above testimony. "Scoobie" was Alvarado's nickname. The testimony concerning Sanabria's statements was redacted by substituting the phrase "another person" for "Scoobie" to avoid specifying Alvarado.[3]

Prior to trial, Sanabria moved to suppress the above statements, claiming that they were coerced. The district court conducted an evidentiary hearing, found that Sanabria was advised of her rights and voluntarily waived them, and denied the motion in a written opinion on April 8, 1988. After considering the government's proposed redactions to Sanabria's statements (quoted above), the court also denied Alvarado's motion for severance in an order dated April 7, 1988. Subsequent applications for severance by Sanabria and Alvarado were also denied.

Neither Alvarado nor Sanabria testified at trial. During cross-examination of one of the BATF agents, Sanabria elicited the "possibility" that one of the agents told Sanabria at BATF headquarters that "if she does not cooperate she is going to get ten years, just like Scoobie." Sanabria also elicited on cross-examination of another BATF agent that someone in the apartment

---

**3.** The district court ruled that one of Sanabria's statements, that she lived in the apartment with Alvarado, could not be successfully redacted. As a result, it was not presented to the jury.

other than Sanabria opened the safe for the agents during the search.

Alvarado called one witness, who testified that she and Alvarado had a romantic relationship and that Alvarado was in fact living with her in the Bronx when the drug transactions charged in the indictment took place. On cross-examination, Alvarado's witness admitted that she did not know where Alvarado was when she was at work, and that sometimes he returned late at night to the allegedly shared apartment.

The trial lasted four days, with the jury returning a guilty verdict against Alvarado on counts one, four and five, and against Sanabria on counts one and four. The jury acquitted Sanabria on count five. Alvarado was sentenced to concurrent three-year prison terms on counts one and four, and a consecutive five-year prison term on count five. Alvarado also received a six-year term of supervised release on counts one and four to be served concurrently with a five-year term of supervised release on count five. In addition, fines totalling $2,500 on counts one and four were imposed upon Alvarado. Sanabria was sentenced to concurrent six-month terms of imprisonment on counts one and four, to be followed by a three-and-a-half year term of supervised release.

This appeal followed.

### Discussion

The contentions of the parties have been outlined earlier herein. We consider first the separate claims of each defendant, and finally their contentions as to severance.

A. Sanabria's Claims

1. *Voluntariness of Statements.*

As indicated earlier, Sanabria did not testify at trial; nor did she testify at the pretrial suppression hearing. The primary testimony concerning the interview of San-

abria by BATF agents on November 20, 1987 was provided on both occasions by BATF agent Alina Sacerio–Polak. The more extensive testimony occurred at the pretrial suppression hearing, and was in substance that Sanabria was told that: she "had a daughter and ... it would be in her best interest to cooperate;" any "cooperation could be brought to the attention of the prosecuting attorney and the judge;" and "if she was to cooperate, it would be maintained ... as quiet as possible, but there is always a possibility that she would have to testify." Sacerio–Polak further testified that it was "a possibility" that Sanabria was told "that if she didn't cooperate, she was going to get ten years just like Scoobie." It is uncontested that Sanabria had her *Miranda* rights explained to her, and signed a written waiver of those rights, prior to the events above described.

 Voluntariness is to be determined by viewing the totality of the circumstances and assessing whether "the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined....' " *United States v. Ferrara,* 377 F.2d 16, 17 (2d Cir.) (quoting *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961)), *cert. denied,* 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967); *see also United States v. Guarno,* 819 F.2d 28, 31 (2d Cir.1987). The factors to be considered include "the type and length of questioning, the defendant's physical and mental capabilities, and the government's method of interrogation." *United States v. Mast,* 735 F.2d 745, 749 (2d Cir.1984). Although we will carefully examine the entire record and make an independent determination of voluntariness on appeal, *id.,* the factual findings of the district court will not be set aside unless clearly erroneous. *Guarno,* 819 F.2d at 30.[4]

---

**4.** In its opinion denying Sanabria's pretrial suppression motion, the district court stated that: "There is nothing in the record which shows any Government threats or promises; even earlier Sanabria *claims* of threats and promises found in her affidavit in support of this motion are for a time period *after* the November 20

statements." On appeal, Sanabria contends that the affidavit in question was mistaken in failing to attribute the "threats and promises" to the November 20 interview. In any event, the testimony of BATF agent Sacerio–Polak describes statements made to Sanabria at the November 20 interview which Sanabria deems to consti-

Sanabria invokes *United States v. Tingle*, 658 F.2d 1332 (9th Cir.1981), in which a confession was determined to be involuntary where the interrogating agent accused Tingle of lying, *id.* at 1333; intimated that Tingle's accomplice had told the agent that Tingle was responsible for planning and executing the staged robbery under investigation, *id.* at 1334; and:

> recited a virtual litany of the maximum penalties for the crimes of which Tingle was suspected, totaling 40 years imprisonment. He expressly stated, in a manner that could only be interpreted in light of the lengthy sentence he had described, that Tingle would not see her two-year-old child "for a while." Referring specifically to her child, [the agent] warned her that she had "a lot at stake." [The agent] also told Tingle that it would be in her best interest to cooperate and that her cooperation would be communicated to the prosecutor. He also told her that if she failed to cooperate he would inform the prosecutor that she was "stubborn or hard-headed."

*Id.* at 1336. Tingle testified that the agent threatened that she would never see her child again if she failed to cooperate. *Id.* at 1334 n. 1. The Court concluded that "the purpose and objective of the interrogation was to cause Tingle to fear that, if she failed to cooperate, she would not see her young child for a long time." *Id.* at 1336.

■ The circumstances presented here are much less compelling. BATF agent Sacerio–Polak's testimony, taken in the light most favorable to Sanabria, does not establish any reiterated recital of maximum penalties, threats to denounce Sanabria to the prosecutor, repetitive references to separation from her daughter, or accusations of lying. Sanabria was interviewed for approximately thirty to forty-five minutes, during which period her physical and mental capabilities were not impaired. In sum, the questioning and concomitant psychological pressure here was far less than that present in *Tingle*, and were not such as to "overbear [the defendant's] will and bring about [a] confession[ ] not freely self-determined." *Guarno*, 819 F.2d at 30 (citations omitted).

■ Sanabria's other allegations of coercion—that she was told that her cooperation would result in a lesser sentence and would be revealed only to the judge and prosecutor—are also unavailing. It is not improper "to mention the situation which [the defendant] faced and the advantages to him if he assisted the government." *United States v. Pomares*, 499 F.2d 1220, 1222 (2d Cir.), *cert. denied*, 419 U.S. 1032, 95 S.Ct. 514, 42 L.Ed.2d 307 (1974). Statements are not involuntary "merely because the suspect was promised leniency if he cooperated with law enforcement officials," so long as the circumstances do not otherwise suggest coercion. *Guarno*, 819 F.2d at 31. Finally, an undertaking to keep any cooperation as confidential as possible is typically a condition set by an *informant* for his or her cooperation; we find no warrant for the proposition that the government, by promising such confidentiality, thereby impermissibly coerces the defendant.

2. *Redaction of Sanabria's Statements and Limitation of Her Cross-Examination.*

■ Sanabria argues that the admission of her statements in redacted, as opposed to original, form "allowed the government to paint her as an important participant and decision maker in the drug conspiracy in her own right rather than a mere observer and companion to Alvarado as suggested by the unredacted statements...." Sanabria claims that the "rule of completeness" required her statements to be admitted in unredacted form.[5]

---

tute the "threats and promises" which we must review. We credit that testimony, summarized earlier in the text and the only significant evidence of record on the issue, in reaching our determination as to voluntariness.

5. This rule is stated as to writings in Fed.R.Evid. 106, but Fed.R.Evid. 611(a) renders it substantially applicable to oral testimony, as well. *United States v. Castro*, 813 F.2d 571, 576 (2d Cir.) (citing 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 106[01], at 106–4 (1986 ed.)),

In *United States v. Castro*, 813 F.2d 571 (2d Cir.), *cert. denied*, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987), we upheld a conviction despite the defendant's claim that he was prejudiced by the admission of testimony concerning his statements with his codefendant's name redacted. The defendant had shown federal agents the location of cocaine in a black plastic bag, adding that the bag belonged to his codefendant. The testimony at trial described those statements without any mention of the codefendant, but noting that the defendant had "in substance" denied ownership of the bag and its contents. The court held that:

> While Castro had an interest in having his statement presented in context, the court had concurrent obligations both to protect the interests of the co-defendant ..., who could have been implicated by Castro's full statement, and to consider the interests of judicial economy, which are advanced by a joint trial.

*Id.* at 576. Upon review, we will not disturb the district court's balancing of these interests unless an abuse of discretion appears. *Id.* (citing *United States v. Weisman*, 624 F.2d 1118, 1128–29 (2d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980)).

 The redaction of Sanabria's statements did not violate the "rule of completeness." To the extent that the rule applies to oral testimony, it requires that such testimony " 'should at least represent the tenor of the utterance as a whole, and not mere fragments of it.' " *Id.* (quoting 7 Wigmore on Evidence § 2099, at 618 (Chadbourn rev. ed. 1978)). Consequently, the rule is violated only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant. *See, e.g., United States v. Kaminski*, 692 F.2d 505, 522 (8th Cir.1982).

In this case, the admission of Sanabria's statements in redacted form neither distorted their meaning nor excluded information which substantially exculpated her. If Alvarado's name had appeared in Sanabria's incriminating statements, their only

effect would have been to incriminate Alvarado more, and not Sanabria less. The extent of Sanabria's involvement, her level of complicity, and the inculpatory nature of her admissions would have been the same whether "Scoobie" or "another person" had been uttered in the testimony reciting her statements, which established in either event her suspicions that Colon was an undercover policeman, her participation in packaging the cocaine, her knowledge concerning the mode of its delivery from the supplier, and her receipt of money from an accomplice in the vicinity of the BATF holding cell. Thus, we find that the district court was well within its discretion in admitting Sanabria's statements in redacted form. The ruling protected Alvarado's right to confrontation of the witnesses against him and served the interests of judicial economy by allowing for a joint trial of two defendants whose alleged criminal conduct arose from the same set of facts. *Castro*, 813 F.2d at 576.

In light of the above, we see little substance to Sanabria's claim that her counsel should have been allowed to cross-examine prosecution witnesses to establish that she received the $500 in the vicinity of the holding cell from Alvarado rather than one of the others (Alex and Choco) arrested with them. The scope and extent of cross-examination are generally within the sound discretion of the trial court. *Pedroza v. United States*, 750 F.2d 187, 195 (2d Cir. 1984) (collecting cases). There was no abuse of that discretion in foreclosing cross-examination that would have been of marginal benefit to Sanabria while clearly violative of Alvarado's right of confrontation, to which we now turn.

B. Alvarado's Claims.

1. *Admission in Evidence of Testimony Concerning Sanabria's Redacted Statements.*

 Alvarado contends that admission of Sanabria's redacted statements impermissibly inculpated Alvarado, thereby denying his sixth amendment right to con-

front the witnesses against him because Sanabria was a nontestifying codefendant, not subject to cross-examination.

*Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), is the Supreme Court's latest pronouncement on this question. The Court there held that where a codefendant's statement "was not incriminating [to the defendant] on its face, and became so only when linked with evidence introduced later at trial," it was proper to presume that a jury would follow the court's limiting instruction to consider a codefendant's statement only against him. *Id.* at 208, 107 S.Ct. at 1707. In so doing, the court refused to extend *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which held that a limiting instruction was inadequate where the codefendant's statement inculpated the protesting defendant on its face.

Alvarado initially contends that the redacted statements, standing alone, were unconstitutionally inculpatory. This argument is wholly unpersuasive. It is obvious from a reading of the testimony in question that some context must be provided by other evidence before the phrase "another person" can be understood to refer to a specific individual.

Alvarado's alternative contextual approach was rejected by the Supreme Court in *Richardson.* Alvarado argues, as was contended in *Richardson,* that because the evidence taken as a whole could be read to link Alvarado to the redacted statements, thereby inculpating him, the statements should not have been admitted in any form. In *Richardson,* however, the court held that statements which became incriminating "only when linked with evidence introduced later at trial," 107 S.Ct. at 208, were insufficient to raise the presumption that jurors would disregard the court's limiting instructions, and thus presented no sixth amendment violation. *Id.* at 211.

Alvarado correctly points out, however, that the redacted confession in *Richardson* "eliminate[d] not only the defendant's name, but any reference to her existence," *id.,* and that the Court explicitly left the

question presented in this case open by "express[ing] no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id.* 107 S.Ct. at 211 n. 5.

We recently considered this precise question in *United States v. Tutino,* 883 F.2d 1125, 1135 (2d Cir.1989), where we stated:

> This Court has held that a "defendant's *Bruton* rights [are] violated ... only if the statement, standing alone, would clearly inculpate him without introduction of further independent evidence." *United States v. Wilkinson,* 754 F.2d 1427, 1435 (2d Cir.), *cert. denied,* 472 U.S. 1019 [105 S.Ct. 3482, 87 L.Ed.2d 617] (1985). This principle was recently reaffirmed by the Supreme Court in *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). In *Richardson,* the Supreme Court explicitly rejected a "contextual" approach, focusing on whether the redacted statement itself was "facially incriminating" as to the co-defendant. *Id.,* at 208–209, 107 S.Ct. at 1712–13. Under this analysis, whether a co-defendant's statement would be incriminating when linked with other evidence in this case is not relevant if the statement is not incriminating on its face. *Id.*

This case differs from *Richardson* only in that Tutinos's redacted statement does not completely eliminate any reference to the existence of others, but contains neutral pronouns in place of the names of co-defendants. *We hold that a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's* Bruton *rights.* Although the *Richardson* Court declined to rule on the admissibility of such a redacted confession, the principles set forth by the Supreme Court in *Richardson* are consistent with prior decisions of

this Court and our holding today. *See e.g., United States v. Wilkinson*, 754 F.2d at 1435; *United States v. Knuckles*, 581 F.2d 305, 313 (2d Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978).

*Id.* at 1135 (emphasis added); *see also United States v. Burke*, 700 F.2d 70, 85 (2d Cir.), *cert. denied*, 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983).

Alvarado contends that our decision in *United States v. Danzey*, 594 F.2d 905 (2d Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979), requires reversal on this issue. *Danzey*, however, is clearly distinguishable. In that case, the protesting defendant's name had been replaced in a nontestifying codefendant's statement by the term "blank," rather than "another person," and a testifying agent told the jury that the codefendant had used names in his original statement. This allowed the jury to "fill in the blank" with the defendant's name. 594 F.2d at 918. We reversed and granted a new trial, but explicitly stated that it would have been permissible to have "simply referred to the other individual ... without referring to him as 'Blank' and thus preventing ... the jury from knowing that the name of a particular individual had been redacted." *Id.* at 919. That is what was done here.

In light of the foregoing, we conclude that the admission of testimony relating Sanabria's redacted statements, with a limiting instruction, did not violate Alvarado's right of confrontation under the sixth amendment in violation of *Bruton*.

**2. *Sufficiency of the Evidence on Count Five.***

 Alvarado contends that the evidence convicting him on count five for violation of 18 U.S.C. § 924(c)(1) (1982 & Supp. V 1987) was insufficient as a matter of law in light of *United States v. Feliz–Cordero*, 859 F.2d 250 (2d Cir.1988). We find, however, that our recent decision in *United States v. Meggett*, 875 F.2d 24 (2d Cir.1989), requires affirmance on the facts of this case. Both *Feliz–Cordero* and *Meggett*

construed those provisions of 18 U.S.C. § 924(c)(1), also applicable here, which stipulate criminal penalties for anyone who "during and in relation to any ... drug trafficking crime ... uses or carries a firearm...." In *Meggett* we interpreted *Feliz–Cordero* as holding:

that a gun found in a dresser drawer of an apartment in which some of the defendants' narcotics paraphernalia was located had not been "used" within the meaning of § 924(c)(1).... Implicitly recognizing the teaching of the prior case law to the effect that "use" requires possession of a gun under circumstances where the weapon is so placed as to be an integral part of the offense, we emphasized the absence of proof that the defendants in *Feliz–Cordero* had placed the weapon to have it available for ready use during the transaction.

*Meggett*, 875 F.2d at 29.

We held in *Meggett* that a defendant can "use" a gun in violation of § 924(c)(1) without firing or exhibiting it. *Id.* A gun can be used if "possession [of the gun] is an integral part of the predicate offense and facilitates the commission of that offense." *Id.* Reviewing various circuit court precedents involving "possession of narcotics at premises where weapons were also located," we stated: "The courts had no trouble in finding that the presence of these guns constituted 'use' to protect the defendant's possession of the narcotics. The guns were an integral part of the narcotics offense and facilitated that offense." *Id.* We went on to find that the jury in *Meggett* "could reasonably conclude that the five loaded firearms in [defendant's] apartment were on hand to protect that apartment as a storage and processing point for large quantities of narcotics and that therefore the presence of weapons furthered or facilitated the narcotics operation and was an integral part thereof." *Id.*

*United States v. Grant*, 545 F.2d 1309 (2d Cir.1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977), which we cited in both *Meggett*, 875 F.2d at 27–29, and *Feliz–Cordero*, 859 F.2d at 254 (where it was distinguished), is also instructive.

In *Grant,* a search revealed significant quantities of cocaine and five loaded weapons. The court found that this "small arsenal" of weapons comprised a "tight security operation to protect large quantities of cocaine and hence to commit the felony of possessing cocaine with intent to distribute it," and upheld the section 924(c) conviction. 545 F.2d at 1312–13.

As in *Meggett* and *Grant,* the evidence here supports the jury finding that the several loaded weapons in Alvarado's apartment were strategically located to protect the substantial quantities of cocaine that were packaged and sold in the apartment, as established both by Colon's several drug purchases there and the drugs and drug paraphernalia seized upon execution of the search warrant, and to provide added security during drug sales. Three guns were found in Alvarado's apartment. The first was located in a desk in the "cutting room." On top of the desk were various drug paraphernalia, including balance scales, heat sealers, strainers with a residue of white powder, yellow packages, a box of small plastic glassine envelopes, and a round piece of glass with traces of cocaine.

The two other weapons, along with nearly $3,000 in cash, were found in a safe in a walk-in closet that was part of the cutting room. Next to the safe were two stashes of cocaine and a bullet-proof vest. Although it is true that these guns were placed in a locked safe, a reasonable jury could infer that the guns were located there to protect both the money and the cocaine in the event that a drug deal went sour and a buyer demanded a return of his cash. Moreover, the fact that a bullet-proof vest was close by could lead a jury to believe that Alvarado was quite prepared to use the guns. A jury could reasonably infer that the guns were "on hand to protect th[e] apartment as a storage and processing point for large quantities of narcotics," and that they "furthered or facilitated the narcotics operation and w[ere] an integral part thereof." *Meggett,* 875 F.2d at 29. Thus, unlike *Feliz–Cordero,* there was ample proof "that the defendants ... had placed the weapon[s] to have [them] available for ready use during [drug] transaction[s]," *Meggett,* 875 F.2d at 29 (construing *Feliz–Cordero* ), and the evidence was accordingly sufficient to support a conviction on count five.

### 3. *Consistency of the Verdicts on Count Five.*

Alvarado challenges his conviction on count five of the indictment on the ground that the jury's acquittal of Sanabria on the same charge, despite the identity of the evidence against them, renders the verdicts so inconsistent that his conviction cannot be permitted to stand.

It is well settled that "consistency in the verdict is not necessary." *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). The Supreme Court reaffirmed the *Dunn* rule in *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), stating that inconsistent verdicts are often the product of "mistake, compromise, or lenity," *id.* at 65, 105 S.Ct. at 476, and that justice would not be served by awarding criminal defendants new trials even where "verdicts cannot rationally be reconciled," *id.* at 69, 105 S.Ct. at 479. We most recently followed *Powell* in *United States v. Chang An–Lo,* 851 F.2d 547, 559–60 (2d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 493, 102 L.Ed.2d 530 (1989), in refusing to vacate arguably inconsistent verdicts.

Alvarado nonetheless contends that these cases all relate to inconsistency between verdicts on various counts relating to a single defendant, rather than inconsistency between verdicts concerning two defendants, as to whom the evidence is allegedly identical, on the same count. Alvarado points to a 1920 decision of this court as assertedly "recognizing that where the evidence as to both defendants is exactly the same, inconsistent verdicts will not be allowed to stand." *See American Socialist Soc'y v. United States,* 266 F. 212 (2d Cir.), *cert. denied,* 254 U.S. 637, 41 S.Ct. 12, 65 L.Ed. 451 (1920).

In the first place, the extent to which *American Socialist Soc'y* "recognizes"

such a rule is not at all clear. The court's opinion included a sentence to that effect,[6] but the ruling was that the verdicts were not necessarily inconsistent, and the challenged conviction was affirmed. Secondly, assuming that we recognized or even established any such rule, it is unlikely that it survived *Dunn* and *Powell.* Finally, and in any event, Alvarado has not shown that the evidence against Sanabria and him on this count was identical.

Sanabria, who was acquitted on the gun charge, told an agent after her arrest that she knew the guns were there because she had "played" with them. Alvarado contends that this admission inculpates Sanabria more heavily than Alvarado in the gun crime, but the jury could have viewed it as exculpatory because tending to establish that the extent of Sanabria's contact with the guns consisted only of "playing" with them, rather than readiness to use them in furtherance of narcotics trafficking. More to the present point, (1) the evidence was clearly not identical as to the two defendants; and (2) this is precisely the type of speculation from which *Dunn* and *Powell* require us to refrain.

## C. *Denial of Defendants' Severance Motions.*

Both Sanabria and Alvarado maintain that the district court improperly denied their motions for a severance. Alvarado claims prejudice from the introduction of Sanabria's statements in any form, and Sanabria asserts prejudice from the fact that her statements were redacted at all, and (as indicated earlier) from a related curtailment of her cross-examination. Alvarado further contends that Sanabria's defense was antagonistic to his because of testimony (in cross-examination of a BATF agent) concerning the alleged threat to Sanabria that she might be sentenced to ten years, like Alvarado, thus assertedly leading the jury to infer that "Alvarado was so culpable that such an extended jail term was appropriate for him;" and testimony that someone other than Sanabria opened the safe containing the guns at the

time of the raid on the apartment, thus assertedly leading the jury (1) to infer that Alvarado had done so, and (2) as a result to convict him on count five.

 As we have stated, decisions to sever are committed to the broad discretion of the trial court, and will be reversed only upon a showing of " 'substantial prejudice.' " *United States v. Potamitis,* 739 F.2d 784, 790 (2d Cir.) (quoting *United States v. Cunningham,* 723 F.2d 217, 230 (2d Cir.1983), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984)), *cert. denied,* 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 269 (1984). Substantial prejudice does not simply mean a better chance of acquittal. *Id.* Rather, a defendant must establish that a " 'miscarriage of justice' " has occurred. *Id.* (quoting *United States v. Herrera,* 584 F.2d 1137, 1143 (2d Cir. 1978) (quoting *Schaffer v. United States,* 221 F.2d 17 (5th Cir.1955))). Moreover, in determining whether severance was properly denied, we must " 'consider the need for judicial economy and the extent to which the judge instructed the jury to consider the evidence separately with respect to each defendant.' " *United States v. Carson,* 702 F.2d 351, 366 (2d Cir.) (quoting *United States v. Losada,* 674 F.2d 167, 171 (2d Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982)), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983).

 For the reasons stated earlier herein, defendants' claims related to the admissibility of Sanabria's statements are unpersuasive. The statements made by Sanabria were properly admitted against her as evidence of her participation in the criminal transactions. Redaction of the statements did not heighten Sanabria's guilt or the damaging nature of her admissions. Thus, the fact that Sanabria would have had her statements admitted in unredacted form were she tried separately did not constitute substantial prejudice. Likewise, there was no miscarriage of justice with respect to Alvarado. The statements were carefully redacted to avoid impermissibly implicating Alvarado, and the jury

---

**6.** "If the acquittal of Nearing was on the first ground, the society ought also to have been acquitted." 266 F. at 214.

was instructed to consider Sanabria's statements only against her.

Alvarado also claims that severance was required because the defenses were so antagonistic that " 'the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant.' " *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir.) (quoting *United States v. Carpentier*, 689 F.2d 21, 28 (2d Cir.1982) (quoting *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir.1981)), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983)), *cert. denied*, 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 269 (1984). We do not find such a situation present here. Although some antagonism exists between Alvarado's defense that he was not involved in the drug operation at the apartment and Sanabria's defense that she was only a bystander in Alvarado's operation, " '[a] simple showing of some antagonism between defendants' theories of defense does not require severance.' " *Id.* (quoting *Carpentier*, 689 F.2d at 27-28).

In this case, the jury did not have to disbelieve one defendant in order to believe the other. Furthermore, the specific instances of prejudice cited by Alvarado (in addition to the admission of testimony concerning the redacted statements of Sanabria) are far too speculative and tangential to have required severance. Rather, with the alleged criminal conduct arising out of the same core of facts, a joint trial clearly served the interests of judicial economy. In addition, the trial judge repeatedly cautioned the jurors to consider the evidence separately with respect to each defendant. We conclude that any antagonism between their defenses did not result in substantial prejudice to the defendants, and no severance was required.

### Conclusion

The judgments of conviction are affirmed.