UNITED STATES of America, Appellee,

v.

Mohamad MUSSALEEN, also known as Johnny, and Sean Courtney McKinnon, Defendants–Appellants,

Hubert Terence Gill, Defendant.

Nos. 1485, 1491, Dockets 93–1668, 1676.

United States Court of Appeals, Second Circuit.

Argued June 14, 1994.

Decided Sept. 13, 1994.

Douglas T. Burns, Asst. U.S. Atty., E.D.N.Y., Garden City, NY (Zachary W. Carter, U.S. Atty., E.D.N.Y., and Susan Corkery, Asst. U.S. Atty., Brooklyn, NY, of counsel), for appellee.

Chris P. Termini, Melville, NY, for defendant-appellant Mohamad Mussaleen.

Roger Bennet Adler, New York City, for defendant-appellant Sean Courtney McKinnon.

Before: McLAUGHLIN, JACOBS, Circuit Judges, and WEINSTEIN *, Senior District Judge.

JACOBS, Circuit Judge:

Defendants-appellants Mohamad Mussaleen and Sean Courtney McKinnon were convicted by a jury for participating in a scheme to smuggle a Guyanan citizen into the United States. They appeal from judgments entered on October 7, 1993, in the United States District Court for the Eastern District of New York (Mishler, J.), convicting them of violating 8 U.S.C. § 1324(a)(1)(B), which prohibits moving or transporting a person knowing that the person is unlawfully in the United States, or in reckless disregard of that fact. McKinnon argues that he was deprived of a fair trial because (a) the court denied McKinnon's motion for a mistrial following testimony by the illegal alien that he carried a gun during the crime; (b) the court erroneously admitted testimony that he was the subject of an unrelated outstanding warrant; (c) his pretrial statement should have been excluded because it was the fruit of an unlawful arrest; and (d) his pretrial statement was improperly redacted in a way that distorted his role in the crime. In addition, both McKinnon and Mussaleen argue that (a) the district court erroneously refused to instruct the jury on a lesser-included offense; (b) § 1324(a)(1)(B) is defective because it permits "reckless disregard" to satisfy the *mens rea* element of the crime; and (c) the district court committed sentencing errors.

---

* Honorable Jack B. Weinstein, of the United States District Court for the Eastern District of New York, sitting by designation.

We affirm the judgments of conviction in all respects.

## BACKGROUND

Parbattie Baichu, having failed to secure a visa allowing her to enter the United States from Guyana, began to explore other, illicit means of emigrating. She found a man in Guyana named Brockfoot, who for $10,500 agreed to arrange for her unlawful entry into the United States. Payment for this service was to be made in the United States by Parbattie's sister, Sandra Baichu, a permanent resident alien living in West Hempstead, New York. On May 23, 1992, Mussaleen telephoned Sandra, and told her that Brockfoot had instructed him to collect a $2,000 downpayment prior to Parbattie's arrival. Sandra delivered this downpayment to Mussaleen in the parking lot of a Sizzler restaurant in West Hempstead on June 23. McKinnon was standing nearby when the downpayment was made.

Parbattie arrived at John F. Kennedy Airport on June 30, 1992, and passed through customs using a false passport. McKinnon met her at the airport, and brought her to a car where Mussaleen was waiting. McKinnon then relieved Parbattie of the false passport and drove the group to Mussaleen's home. When Mussaleen called Sandra to collect the $8,500 balance, however, Sandra told him that she did not have the money. For three days, the defendants moved Parbattie from place to place, pressing Sandra to produce the $8,500 in exchange for her sister's release.

The day after Parbattie arrived at the airport, Sandra began to fear for her sister's safety and contacted the police, who installed a listening device on Sandra's phone. The following day, Sandra arranged to go to the parking lot of a Wendy's restaurant on Long Island, and deliver the money in return for her sister's freedom. Parbattie was brought to the appointed spot by defendant Hubert Gill. After Sandra arrived and met Gill, he was placed under arrest. Both Parbattie and an officer conducting surveillance saw McKinnon in the vicinity.

A few days later, on July 5, 1992, Detective Dennis Barry and his partner visited McKinnon's home. Detective Barry told McKinnon that he was investigating a case involving the smuggling of Guyanan citizens into the United States. McKinnon agreed to accompany the detectives to the police station to answer questions about the case. At the police station, after waiving his *Miranda* rights, McKinnon made a statement regarding his knowledge of the overall smuggling scheme, the smuggling of Parbattie Baichu into the United States, and the efforts to obtain the agreed upon fee from Sandra. He specifically admitted driving Mussaleen to the Sizzler restaurant to pick up the $2,000 downpayment, driving to the airport to meet Parbattie, and driving her to various locations over the course of three days. McKinnon's statements were later reduced to a writing, which he signed. At trial, McKinnon's counsel argued that this conduct is consistent with providing lawful service as a driver for hire.

Mussaleen, McKinnon and Gill were indicted in January 1993 on charges of transporting Parbattie Baichu, "knowing and in reckless disregard of the fact" that she was in the United States illegally. The jury acquitted Gill, but convicted Mussaleen and McKinnon.

Judge Mishler imposed identical sentences of 14 months of imprisonment, three years of supervised release, and a $50 special assessment.

## DISCUSSION

Mussaleen and McKinnon raise numerous claims of error. None justifies reversal or resentencing.

### A. *Improper Testimony*

■■■ McKinnon argues that he was unfairly prejudiced by two statements made at trial, one by the victim, the other by the police officer who arrested McKinnon.

The district court cautioned Parbattie, at the outset of her testimony (and outside the presence of the jury), to make no reference to McKinnon's possession of a gun during the time he was transporting her. In open court, however, when the prosecutor invited her to expand on what Mussaleen had said during

her confinement, Parbattie blurted out the non sequitur, "[McKinnon] was there with the gun." McKinnon moved for a mistrial. The district court denied the motion in light of the overwhelming evidence that the government was expected to produce, as well as the possibility that the testimony might be proper to rebut McKinnon's unfolding theory that he was simply a livery car driver on extended assignment. Although refusing to grant a mistrial, the district court gave the jury a curative instruction, explaining that the defendants were charged only with transporting a known illegal alien, and directed the jury to disregard Parbattie's unresponsive answer.

The second statement that McKinnon claims deprived him of a fair trial was made by Detective Barry. On cross-examination, defense counsel asked him whether he had an arrest warrant relating to the charged crime when he approached McKinnon at his home. Detective Barry replied, "We had a warrant for an unrelated matter." The district court denied defense counsel's motion to strike the answer, as well as the ensuing application for a mistrial. Defense counsel later insisted that the district court give a curative instruction. The court warned that such an instruction would only remind the jury of a warrant that defense counsel wanted forgotten, but gave it anyway.

Given the evidence against McKinnon, neither statement violated his right to a fair trial. Trial errors that do not affect the substantial rights of the defendant are harmless and do not compel the reversal of a criminal conviction. *See United States v. Colombo,* 909 F.2d 711, 713 (2d Cir.1990); Fed.R.Crim.P. 52(a). An error is harmless if the reviewing court is convinced that the error did not influence the jury's verdict. *See id.; United States v. Castano,* 999 F.2d 615, 618 (2d Cir.1993). In that determination, "[t]he strength of the government's case against the defendant is probably the most critical factor." *Colombo,* 909 F.2d at 714.

The evidence of McKinnon's guilt is solid. Parbattie testified that, when McKinnon met her at the airport, he took her forged passport before driving her to Mussaleen's home. She testified that McKinnon drove her from place to place for the next few days, and that he asked her at one point whether she "got through to her sister about the money." Witnesses placed McKinnon on the scene at several critical times in the course of the crime, as when (for example) Mussaleen collected the downpayment from Sandra Baichu, and when Gill attempted to exchange Parbattie for the balance of the fee. McKinnon's own pretrial statement revealed that he was aware of a conspiracy to charge a fee for arranging the illegal entry of Guyanans to the United States, and also corroborated much of the testimony given by other witnesses. Given the strength of this evidence, it is highly unlikely that either Parbattie's reference to a gun or Detective Barry's reference to an unrelated warrant influenced the jury's verdict. In any event, McKinnon's display of a gun to his passenger would have been admissible to rebut McKinnon's theory that she was an ordinary fare.

Moreover, the district court gave appropriate curative instructions following the blurted testimony of Sandra Baichu and Detective Barry. The Supreme Court has emphasized the normal assumption

> that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions, *Richardson v. Marsh,* 481 U.S. 200, 208 [107 S.Ct. 1702, 1708, 95 L.Ed.2d 176] (1987), and a strong likelihood that the effect of the evidence would be "devastating" to the defendant, *Bruton v. United States,* 391 U.S. 123, 136 [88 S.Ct. 1620, 1628, 20 L.Ed.2d 476] (1968).

*Greer v. Miller,* 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987). Even if the evidence against McKinnon had been less strong, neither comment is so "devastating" as to overcome the assumption that the jury will follow the court's instructions.

**B.** *Redaction of McKinnon's pretrial statement.*

 McKinnon's pretrial statement was redacted as set forth in the margin,[1] in an effort to protect Mussaleen's Sixth Amendment confrontation right. *See generally, United States v. Williams,* 936 F.2d 698, 700–01 (2d Cir.1991) (discussing *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and its progeny). McKinnon argues on appeal that the redaction distorted his statement, depicting him in a light that "failed to convey McKinnon's limited role, financial arrangements, and lack of parity with Mussaleen." He contends that the "rule of completeness," embodied in Fed. R.Evid. 106, barred the abridgement. While Rule 106 applies only to writings, we have previously explained that the rule of completeness is "substantially applicable to oral testimony, as well" by virtue of Fed.R.Evid. 611(a), which obligates the court to "make the interrogation and presentation effective for the ascertainment of the truth." *United States v. Alvarado,* 882 F.2d 645, 650 n. 5 (2d Cir.), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1989). In deciding whether to redact portions of a defendant's statement, a district court balances the interest in protecting a co-defendant's confrontation right against the judicial economy promoted by conducting a joint trial. *See United States v. Castro,* 813 F.2d 571, 576 (2d Cir.), *cert. denied,* 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). We review the district court's balancing of these competing interests under an abuse of discretion standard. *See id.; Alvarado,* 882 F.2d at 651.

 We detect no abuse of discretion here. The redacted version of McKinnon's statement did not unfairly distort the original, and certainly did not exclude substantially exculpatory information. *See Alvarado,* 882 F.2d at 651. Since the redacted version of McKinnon's statement conveys the substance and context of the statement as a whole, it does not offend the rule of completeness. *See id.* The unabridged statement, which provides additional details about his knowledge of the smuggling scheme, is marginally more damaging to McKinnon than the redacted version. McKinnon primarily argues that the editing weakened his defense by redacting all references to the fact that he was to be paid no more than taxi fare for his participation, while others were

---

1. McKinnon's statement, in relevant part, reads as follows (the underlined portions were redacted by the district court):

I know this guy *"Indian," Mohammed Mussaleen, he is also known as "Bob."* ... About six months ago he tells me he *and his brothers* got something going, bring people from Guyana to the U.S. illegal *charging money.*
*I think about a couple of weeks ago about June 23rd Tuesday,* [Mussaleen] asked me to give him a ride to Hempstead Turnpike, Hempstead, N.Y. by the back of the Sizzler.... *[Mussaleen] told me that he had to collect money from a lady, $2,000, because he was bringing her sister hear [sic] from Guyana illegal and she was paying him for it.* When we got there minutes before seven at night I pulled into the back parking lot of the Sizzler.... *[Mussaleen] got out and met the lady, an Indian woman, light skinned Indian, short, black hair. They went into the back of the Sizzler.* [Mussaleen] came out a short while later. [Mussaleen] got in the car and said take me home *to Ozone Park, and when we were driving he had his hand in his pocket and said $2,000,* I dropped him off but he didn't pay me he agreed to pay me $40.00 for that deal.
I think on Tuesday June 30, 1992, I took [Mussaleen] and his son "Lugs" to J.F.K. airport.... We went in and then we met a guy and a girl who got off the plane. We all went out to my car and I drove them *to [Mussaleen's] house....* I had a deal for $50.00 for that airport run. I then saw [Mussaleen] about 6:00 a.m. Wednesday July 1, 1992, at Church Avenue and I try to collect and he says check with me in the afternoon. About 6:30 I see [Mussaleen] at his house and he says drop him and the girl off around the corner by the train tracks. *[Mussaleen] went in his house,* came out about ten minutes later with the girl, same one from the airport, and we dropped her off around the corner.... 
On Thursday July 2, 1992 ... *I went to [Mussaleen's] house to collect my money he never paid me, he wasn't home, I went back to Brooklyn.* [Mussaleen] showed up in Brooklyn by Church Avenue and asked me if I would take this girl (same one from the airport) to Long Island *so he could get the rest of the money the $8,500.* I told him no. [Mussaleen] asked this guy Ray to do it and he said yes. Ray didn't know how to get to Long Island and he asked me to go with him so I said yes. *Then in Ray's car, blue Buick, Ray driving, me in the front passenger seat [Mussaleen] in the back* picked up the girl at Saratoga Ave. *Then we dropped [Mussaleen] off at 98th St and Church* and we went to the Island.... Then Ray dropped me off by the Hotel by Woodfield Rd. and he went on his way....

collecting large sums. However, contrary to McKinnon's claim, the redacted statement did *not* exclude the fact that he expected to receive only $40 for driving Mussaleen on one occasion. While the court redacted all references to the $2,000 downpayment and the $8,500 balance, that information reached the jury through the testimony of Sandra Baichu. Since this testimony allowed the jury to compare the financial expectations of each of the defendants, and since his unabridged statement was possibly more inculpatory than the edited version, we find no abuse of discretion in the district court's decision to redact portions of McKinnon's statement.

### C. *Suppression ruling.*

█ McKinnon next contends that the district court erred in denying his motion to suppress his pretrial statement, which he claims was obtained illegally because the detectives who visited him at his home had no arrest warrant when they asked him to accompany them to the police station. The test for determining whether McKinnon was in custody is "whether a reasonable person in the defendant's position would have understood himself to be 'subjected to the restraints comparable to those associated with a formal arrest.'" *United States v. Mitchell,* 966 F.2d 92, 98 (2d Cir.1992) (quoting *Berkemer v. McCarty,* 468 U.S. 420, 441, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984)). The district court found that McKinnon was not in custody when he left his house with the detectives:

> When the police officers came to the McKinnon house, it was [for] the purpose of the investigation and to seek Mr. McKinnon's cooperation. When he entered the vehicle, Mr. McKinnon might have thought that he wasn't free to leave, but from an objective view of the purpose

and procedure used by the police officers ... he was not under arrest.

We review a district court's ruling on a custody issue for clear error. *See id.* Moreover, after a court has denied a motion to suppress, we view the evidence in the light most favorable to the government. *United States v. Caba,* 955 F.2d 182, 185 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992).

█ McKinnon fails to specify conduct by the detectives amounting to the kind of coercive pressure that would cause a reasonable person to feel that he had no choice but to submit. Seeing no reason why the court's suppression ruling was clearly erroneous, we will not disturb it.

### D. *Lesser-included offense.*

█ McKinnon, joined by Mussaleen, claims that the district court erred in denying their request to instruct the jury regarding a lesser-included offense. The lesser-included offense posited by the defendants is aiding and abetting illegal entry by an alien, prohibited by 8 U.S.C. § 1325(a). "[A] defendant is ordinarily entitled to a lesser-included offense instruction whenever the lesser offense is completely encompassed within the greater...." *United States v. Busic,* 592 F.2d 13, 24 (2d Cir.1978); *see* Fed.R.Crim.P. 31(c) ("The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense."). Here, the offenses are altogether distinct. Section 1325(a) proscribes illegal *entry* into the United States by an alien.[2] Defendants were convicted of violating § 1324(a)(1)(B), which proscribes transporting a known illegal alien within the United States *after entry* has been made.[3]

---

**2.** 8 U.S.C. § 1325(a) reads:

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more

than 6 months, or both, and for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both.

**3.** 8 U.S.C. § 1324(a)(1) reads, in relevant part,

> (1) Any person who—
>
> \* \* \* \* \* \*
>
> (B) knowing or in reckless disregard of the fact that an alien has come to, entered, or

*See also United States v. Loya,* 807 F.2d 1483, 1485–86 (9th Cir.1987) (construing earlier versions of §§ 1324 and 1325, and finding that the latter is not a lesser-included offense of the former); *United States v. Pruitt,* 719 F.2d 975, 978 (9th Cir.) (same), *cert. denied,* 464 U.S. 1012, 104 S.Ct. 536, 78 L.Ed.2d 716 (1983). Since the offense of aiding and abetting Parbattie's illegal entry into the United States is not necessarily included in the offense of transporting her once she had accomplished her illegal entry, the district court properly declined to charge the lesser-included offense.

### E. *Reckless disregard.*

■ Section 1324(a) prohibits the knowing transportation of an illegal alien, as well as the same act done with reckless disregard of the fact that the person is an illegal alien. Defendants challenge their convictions on the ground that the statute permits conviction without requiring actual knowledge in satisfaction of the *mens rea* element. Neither Mussaleen nor McKinnon explain why this should be impermissible. While courts have sometimes required actual knowledge of the illegality of certain conduct to support a conviction, such cases involve statutes that either explicitly or through judicial interpretation require actual knowledge to satisfy the *mens rea* element of the crime. *See, e.g., Ratzlaf v. United States,* —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (statute prohibiting the "willful" violation of antistructuring provision requires proof that defendant had actual knowledge that structuring financial transactions to avoid reporting requirements was illegal); *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (statute prohibiting the "knowing" unlawful acquisition or possession of food stamps requires proof that defendant had actual knowledge that conduct was illegal).

remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

\* \* \* \* \* \*

shall be fined in accordance with Title 18, or imprisoned not more than five years, or both,

However, Mussaleen and McKinnon were convicted under a statute that specifically prohibits transporting a person in reckless disregard of the fact that she is an illegal alien. "The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota,* 471 U.S. at 424, 105 S.Ct. at 2087. Indeed, many federal statutes allow a defendant to be convicted on the basis of the reckless disregard of certain facts or risks. For example, the definitions of some statutes make "reckless disregard" the equivalent of knowledge for determining what conduct is unlawful. *See, e.g.,* 21 U.S.C. § 321(bb)(2) (definition of "knowledge" for purposes of the Food, Drug and Cosmetic Act includes "acts in deliberate ignorance or reckless disregard of the truth or falsity of the information"); 31 U.S.C. § 3729(b)(3) (definition of "knowledge" for purposes of the False Claims Act includes "acts in reckless disregard of the truth or falsity of the information"). We have also noted that "[t]he word 'willfully' generally denotes either an intentional violation or a reckless disregard of a known legal duty." *Citron v. Citron,* 722 F.2d 14, 16 (2d Cir.1983) (discussing statute making it a crime to "willfully" engage in wiretapping), *cert. denied,* 466 U.S. 973, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984). In short, the defendants may properly be convicted under a statute that permits "reckless disregard" to satisfy the *mens rea* element of the crime.

### F. *Upward departure.*

■ The district court departed upward two offense levels, from a Guidelines sentencing range of 4–10 months to a range of 8–14 months, and then sentenced both McKinnon and Mussaleen to 14 months. The basis for this departure was U.S.S.G. § 5K2.4, which provides:

for each alien in respect to whom any violation of this paragraph occurs.

If a person was abducted, taken hostage, or unlawfully restrained to facilitate commission of the offense or to facilitate the escape from the scene of the crime, the court may increase the sentence above the authorized guideline range.

In making this departure, the district court found that at the time Parbattie entered the defendants' automobile at the airport, "the defendants planned to hold her hostage to ensure payment of the sums they said they were due under the obviously illegal agreement...."

The defendants do not directly challenge the district court's finding of conduct amounting to their unlawful restraint of Parbattie while they tried to exact the promised payment from Sandra. Instead, proceeding sidelong, they complain that the district court failed to consider U.S.S.G. § 5K2.10, which permits the district court to reduce the sentence below the Guidelines range "[i]f the victim's wrongful conduct contributed significantly to provoking the offense behavior...." In this way, the defendants argue that the upward departure was improper because Parbattie was complicit in the events that held her hostage. Contrary to the defendants' assertion, however, the district court *did* hear these arguments about the victim's wrongful conduct under § 5K2.10, and found that the circumstances did not warrant a downward adjustment to the sentences. Section 5K2.10 grants the sentencing court the same discretion to depart from the applicable Guidelines range as other § 5K2 provisions. "[A] district court's refusal to grant a downward departure is not reviewable unless it was made under the mistaken conclusion that, as a matter of law, the court did not have the authority to depart." *United States v. Rogers,* 972 F.2d 489, 492 (2d Cir.1992). Since the district court was aware of its authority to adjust the sentence *downward* under § 5K2.10, but after consideration declined to downwardly depart, we may not disturb the district court's ruling.

In any event, the defendants do not prevail even if we construe defendants' appeal as a challenge to the finding that Parbattie could not be held "hostage" under the circumstances. Parbattie did indeed voluntarily enter a network of criminal operatives with the intention that they would transport her illegally to her sister in the United States. Moreover, her sister may have expected—or feared—that Parbattie would be held pending payment of the balance due. But Parbattie herself cannot be said to have provoked her own detention pending a COD payment for her person.

### G. *Other arguments.*

We have carefully considered the defendants' other arguments and find them to be without merit.

## CONCLUSION

For the foregoing reasons, the judgments of the district court are affirmed.