Freddie WARREN, Petitioner,

v.

Robert MILLER, Superintendent, Eastern Correctional Facility, Respondent.

No. CV 98–2564.

United States District Court, E.D. New York.

Jan. 5, 2000.

Freddie Warren, Napanoch, New York City, pro se.

James Catterson, Jr., Suffolk County District Attorney, by Brian T. Grauer, Assistant District Attorney, Riverhead, NY, for respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Presently before the court is the petition of Freddie Warren ("Warren" or "Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Warren is presently serving a sentence of twenty years to life as a persistent felony offender under New York State law. For the reasons set forth below, the petition is denied.

### I. *Factual Background and the Arrest and Indictment of Freddie Warren*

Warren was arrested on May 24, 1989, in connection with a "buy and bust" operation conducted by Suffolk County police officers on the previous evening, May 23, 1989. On that night, Police Officers Edward Gubinski and Dennis Murphy were patrolling Wyandach, New York, posing as individuals interested in purchasing illegal narcotics. Once the "buy" was made, it was the officers' intent to called for a marked unit with uniformed officers who would arrive on the scene and arrest the seller.

On this particular occasion, officers Gubinski and Murphy drove to Henry Street and Lake Drive in Wyandanch and drove to a house where a group of individuals were standing. The officers were approached by Warren, who sold them twenty dollars worth of crack cocaine. The officers then left the scene and radioed a description to the marked unit. Upon their arrival, however, the marked unit could not locate anyone matching the description given by the undercover officers and no arrest was made.

On May 24, 1989 (the following day), officer Gubinski returned to the Wyandanch area to find the person from whom he had purchased drugs on the previous

evening. Warren was found three blocks from where the sale took place. Officer Gubinski kept Warren under surveillance until a back up unit could respond to make the arrest. Upon Warren's arrival at the precinct, Officer Gubinski, without mentioning the previous night's activities, asked Officer Murphy to look at the individual who was just brought into the precinct. When Officer Murphy viewed Warren, he, too, identified Warren as the individual involved in the previous night's drug transaction. Warren was thereafter indicted on one count of Criminal Sale of a Controlled Substance in the Third Degree (N.Y.Penal Law § 220.39) and one count of Criminal Possession of a Controlled Substance in the Third Degree (N.Y.Penal Law § 220.16).

## II. Warren's Pretrial Request for New Counsel

After indictment and prior to trial or any pretrial hearings, Warren sought to have his court-appointed attorney from the Legal Aid Society (the "Legal Aid attorney") removed and new counsel appointed. In support of his claim for new counsel, Warren alleged that he and his counsel did not see eye to eye. Warren's complaint regarding counsel stemmed from the lawyer's refusal to submit part of Warren's pro se motion to the trial court. The Legal Aid attorney explained to the court that, in accord with the judge's directions, he had reviewed Warren's motion and submitted to the court only that portion of the motion that he considered to have legal merit. The remainder of the motion had not been submitted.

Warren argued that he had lost confidence in counsel and insisted, repeatedly, that new counsel be appointed. In a proceeding where counsel and Warren were both present, the trial court denied Warren's application to have new counsel appointed. The court held that counsel had acted appropriately with respect to the portion of Warren's motion that had not been submitted. The court noted counsel's

competence during the course of Warren's proceedings and with respect to many other criminal matters. In view of the fact that Warren had failed to come forward with any good cause to dismiss counsel, the trial court rejected the application to appoint a new attorney. Warren was granted the right to proceed with the Legal Aid attorney or on his own, with counsel present as an advisor.

## III. Plea Negotiations

Prior to trial, the parties engaged in plea bargaining. Warren was advised on numerous occasions that, if convicted, he faced the possibility of enhanced sentencing due to prior convictions. Warren was clearly and unequivocally advised on the record that as a result of prior felony convictions he faced the possibility of sentencing as a persistent felon under the New York Penal Law. If Warren were found to be such a felon, he would be subject to a minimum term of imprisonment of fifteen to twenty five years and a maximum term of imprisonment of life. See N.Y.Penal L. § 70.10(2).

The District Attorney's office offered Warren a plea that would result in a term of imprisonment of four and one half to eight years. The state judge told Warren, on several occasions, that if he accepted the District Attorney's offer, he would be sentenced to a term of imprisonment of only three to six years. Despite the possibility of substantially harsher sentencing if he were to lose at trial, Warren rejected all offers to plead guilty and opted instead to proceed to trial.

## IV. Pretrial Hearings

Prior to trial the state court held a hearing pursuant to People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974) (the "Sandoval hearing"), to determine the permissible scope of the District Attorney's cross-examination of Warren if he elected to testify at trial. The court also held a hearing pursuant to pursuant to United States v. Wade, 388

U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (the *"Wade* hearing"), to determine the admissibility of identification evidence.

At the *Sandoval* hearing, which was argued vigorously by Warren's Legal Aid attorney, the court held that convictions from 1972 and 1983 could be relied upon to impeach Warren. The court also ruled that the District Attorney could refer to several misdemeanor incidents if Warren chose to testify.

The *Wade* hearing was thereafter held to determine whether the arresting officers could make an in-court identification of Warren based upon the identification by Gubinski on May 24, 1989 and by Murphy at the police precinct. At this hearing officers Gubinski and Murphy testified regarding the events of May 23 and 24, 1989, and the conditions under which they identified Warren. Warren's Legal Aid attorney was present and cross-examined the officers regarding their identifications. At the conclusion of the *Wade* hearing, the trial judge denied the defense motion to suppress any in-court identification of Warren and held that the officers could testify regarding their identification of Warren at the scene of the crime as well as the confirmatory identifications on the following day.

## V. *The Testimony At Trial*

Officers Gubinski and Murphy testified as to the events surrounding the purchase of the drugs, the subsequent arrest, and the identification procedure.

Officer Gubinski testified that he was the passenger in the vehicle used during the buy and bust operation. He stated that he and Officer Murphy entered Henry Street at approximately 9:00 P.M. and observed a group of four individuals (two men and two women) standing near the side of a house. They drove their vehicle to the house and were approached by one of the men in the group who walked to the passenger side of the vehicle and asked what the officers needed. Murphy responded by saying, "We're looking for a twenty." The man asked to see the money and the officers produced a twenty dollar bill. Gubinski stated that the man gave him a sample of the substance. Gubinski examined it, while never taking his eye off the subject, and concluded that the substance was crack cocaine.

On cross-examination of the officers, the defense questioned whether the lighting conditions were sufficient for an accurate identification of the subject. Both Gubinski and Murphy responded by stating that a street light provided enough illumination for them to see the individual and develop an accurate description to radio to the marked unit.

As noted above, upon completion of the sale, Gubinski radioed a description to the backup unit. Specifically, Gubinski described the seller as a Black male, between 5'10"–6'0" feet tall, in his late thirties with a dark complexion, full mustache and beard and wearing a grey hooded sweat shirt, zippered up, acid washed jeans and white high top sneakers. Because none of the individuals near the house when the back up unit arrived matched this description, no arrest was made on the night of the sale.

On May 24, 1989, officer Gubinski returned to the area in an attempt to locate the subject of the previous evenings' sale. Officer Gubinski testified that, approximately three blocks from where the sale took place on the previous night, he observed a man wearing a grey-hooded sweatshirt similar to the one worn by the missing suspect. Gubinski stated that he got to within twenty feet of this man and immediately identified him as the man who sold him the narcotics. Gubinski then radioed a sector car with a description and kept the man under surveillance until that unit arrived. When the uniformed officer began to question the subject, Gubinski returned to the precinct.

Later that evening, Gubinski told Murphy to look at the man the sector car brought in without suggesting who that

person might have been. Murphy went to the uniformed squad room and observed the man through a door. He immediately identified him as the subject from the previous night. In addition to this testimony, the prosecution offered evidence from the Suffolk County Crime Lab which established that the substance sold to the officers was, in fact, crack cocaine. Warren did not testify at trial.

The jury convicted Warren of Criminal Sale of a Controlled Substance in the Third Degree on February 23, 1990. The second count of the indictment against Warren charging Criminal Possession of a Controlled Substance in the Third Degree was dismissed by the court after trial.

## VI. *Sentencing Proceedings*

Prior to sentencing Warren the state court held a hearing pursuant to New York Criminal Procedure Law § 400.20 to determine whether Warren should be sentenced as a persistent felony offender, in which case a more severe sentence would be imposed. Under the applicable standard, it was the prosecution's burden to show: (1) that Warren had been previously convicted of, and not pardoned for, more than one prior felony and, (2) that the history and character of Warren, and the nature and circumstances of his criminal conduct, indicated that extended incarceration and life time supervision would best serve the public interest. *See* N.Y.Penal L. § 70.10.

The sentencing hearing began on June 4, 1990, with the prosecution presenting a certificate evidencing a 1972 conviction of burglary in the second degree. Petitioner claimed that he did not plead guilty to the charge and defense counsel objected to the introduction of certificate. The court granted the prosecution a continuance to obtain the plea minutes to establish what occurred in 1972 but continued the hearing for the purpose of considering other evidence.

The prosecution then presented a certificate of conviction for a 1983 felony, burglary in the third degree. Warren admitted to the authenticity of this certificate of conviction which referred to Warren as a second time felony offender. Warren admitted that he had pled guilty to the 1983 felony and that the certificate was accurate. In view of this acknowledgment, the prosecutor argued that the court should take judicial notice of the 1972 conviction. The court, noting that Warren continued to dispute the 1972 conviction, declined to take judicial notice of that conviction and adjourned the sentencing hearing until July 9, 1990, to allow the District Attorney time in which to obtain the plea minutes relating to the 1972 conviction.

At the continued hearing the prosecution presented the minutes from the 1972 plea and sentencing as well as a report prepared by the Probation Department (the "Presentence Report"). The sentencing minutes contained an extensive factual allocution detailing Warren's participation in a robbery and burglary. Because the minutes were lengthy, the court gave Warren time to read through the transcript and continued the hearing until July 11, 1990. On that date, Warren's counsel took issue with the authenticity of the plea minutes. Additionally, defense counsel argued that the District Attorney had failed to sustain the burden of proving that Warren's history and character and the nature and circumstances of his criminal conduct indicated that extended incarceration and life time supervision would best serve the public interest. Counsel argued that the Presentence Report was too short upon which to rely to support the requisite findings. He also argued that the report contained erroneous information and pointed out that the probation department had not recommended that Warren be sentenced as a persistent felony offender.

After hearing argument, the state judge reviewed Warren's criminal history, beginning with a 1967 sentence of probation from the Family Court, and including, *inter alia,* robbery charges stemming from

1970, 1971, 1972 and 1983. The court found that Warren was completely without any redeeming value in the community and displayed a complete disregard for the criminal justice system and the interests or the welfare of society. Accordingly, the court deemed Warren to be a persistent felony offender and imposed sentenced accordingly. Thus, Warren was sentenced to a term of imprisonment of twenty years to life.

## VII. Direct and Collateral Appeals

### A. Warren's Direct Appeal

Warren appealed his conviction to the Appellate Division of the Supreme Court, Second Department. On appeal, he argued that the sentence imposed: (1) was excessive; (2) violated Warren's right to due process of law and to be free from cruel and unusual punishment, and (3) was imposed only after Warren refused to waive his right to appeal. Warren also argued that the sentencing court abused its discretion when sentencing Warren as a persistent felony offender. It was also argued that the persistent felony offender statute is unconstitutional for two reasons. First, because it requires proof of defendant's poor character only by a mere preponderance of the evidence and because of the alleged "untrammeled" discretion afforded the sentencing judge.

Warren's appeal also attacked the sentencing court's reliance upon the Presentence Report and the alleged failure of the court to resolve factual issues. Warren argued ineffective assistance of counsel and prejudicial error in the trial court's *Sandoval* and *Wade* rulings. Finally, Warren's appeal took issue with certain evidentiary rulings and the trial court's jury instructions.

On June 21, 1993, the Appellate Division upheld Warren's conviction and sentence. *See People v. Warren*, 194 A.D.2d 756, 600 N.Y.S.2d 75 (2d Dep't 1993). The appellate court rejected the claim that Warren was denied effective assistance of counsel when the trial court refused to assign new counsel. Warren's statement that he had lost confidence in his attorney was held not to rise to the level required to support substitution of assigned counsel. The Appellate Division also stated that nothing in the record supported Warren's claim that he was punished and sentenced excessively for opting to exercise his right to trial. The court similarly held that the trial court had properly exercised its discretion to sentence Warren as a persistent felony offender and that the sentenced imposed was not excessive.

With respect to Warren's remaining claims, the Appellate Division stated only that the claims were considered and found to be either without merit or unpreserved for review. Accordingly, Warren's conviction and sentence were upheld in their entirety. Petitioner sought leave to appeal his conviction to the New York State Court of Appeals. That court denied Warren's application on October 1, 1993. *See People v. Warren*, 82 N.Y.2d 808, 604 N.Y.S.2d 945, 624 N.E.2d 1040 (1993).

### C. Collateral Attacks to the Conviction

After exhausting his direct appeal, Petitioner attacked his conviction pursuant to New York Criminal Procedure Law § 440.10(1) ("Section 440"). The first Section 440 motion was submitted in July of 1994 and was made pursuant to NYCPL § 440.10(1)(b), (c), (d), (f), and (h). In this motion, Petitioner alleged the existence of exculpatory documents establishing that he was arrested on a bench warrant on the day of the alleged drug sale (May 23, 1989), two and a half hours before the sale took place. On December 8, 1994, the trial judge denied Warren's motion. The court pointed out that the facts relied upon in the motion (primarily that Warren was in custody at the time that the crime was committed) were known to Warren at the time of the trial and should have been presented at that time. When denying the motion, the court also rejected Warren's claim that the documents constituted *Bra-*

*dy* material that should have been turned over to the defense.

Petitioner's second Section 440 motion was made on April 23, 1997. In the context of this motion, Warren alleged ineffective assistance of trial counsel based upon counsel's failure to adopt the pre-trial motions prepared by Warren and to call certain witnesses at the sentencing hearing. This motion was denied in a memorandum and order dated June 9, 1997. The court denying the motion held that the issues raised in this Section 440 motion should have been presented on the first Section 440 motion since Warren had presented evidence in existence at the time of the first motion. Additionally, the court noted that the Appellate Division had already rejected Warren's ineffective assistance claim. Warren sought leave to appeal the denial of his second Section 440 motion. Permission to appeal was denied by the Appellate Division in a memorandum and order dated September 17, 1997.

Petitioner then instituted a motion for a Writ of Error Coram Nobis on November 3, 1997. In this motion he alleged ineffective assistance of appellate counsel. Specifically, Warren alleged that appellate counsel failed to argue properly the ineffective assistance of trial counsel issue. In an opinion dated February 9, 1998, the Appellate Division denied this application, holding that Warren had failed to establish that he was denied effective assistance of appellate counsel. *See People v. Warren,* 247 A.D.2d 496, 668 N.Y.S.2d 92 (2d Dep't 1998).

D. *The Present Petition for Habeas Corpus*

Petitioner commenced this federal proceedings asserting ten separate claims for relief. Three of the claims relate to the sentenced imposed. Specifically, Petitioner claims: (1) that his sentence violated his due process rights because it was imposed vindictively in retaliation for Petitioner's exercise of his right to a trial (the first claim for relief); (2) that his sentence constituted cruel and unusual punishment (the second claim for relief) and, (3) that the trial court's consideration of the Presentence Report and failure to properly resolve factual issues deprived Petitioner of his due process rights (the third claim for relief). Three of Petitioner's claims allege ineffective assistance of counsel—two claims relate to representation at the trial level (the fourth and ninth claims for relief) and one claim refers to representation at the appellate level (the tenth claim for relief).

Two of Petitioner's claims for relief are based upon the trial court's allegedly erroneous rulings regarding the admissibility of evidence. First, Petitioner takes issue with the trial court's *Sandoval* ruling, arguing that the court improperly allowed the impeachment of Petitioner with prior convictions (the fifth claim for relief). Second, Petitioner argues that evidence concerning the cocaine sold by Petitioner and an undercover officer's reference at trial to Petitioner's warrant history were admitted in violation of his due process rights (the eighth claim for relief). Next, Petitioner alleges that his identification by the arresting officer, pursuant to the pretrial *Wade* ruling, violated Petitioner's due process rights (the sixth claim for relief). Finally, Petitioner claims that the trial court's jury instructions violated his right to due process of law (the seventh claim for relief).

## DISCUSSION

I. *General Principles and Standard of Review*

Pursuant to the federal habeas corpus statute, the Anti–Terrorism and Effective Death Penalty Act of 1997 ("AEDPA"), a writ of habeas corpus may be entertained only on the ground that the petitioner is being held in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Where a state court has adjudicated the merits of a habeas petitioner's claim, AEDPA states that relief may not be granted unless: (1) the

state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law ..." or (2) the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

■ Both AEDPA and its predecessor statue recognize the presumption of correctness to be applied to state court findings of fact. *See* 28 U.S.C. § 2254(e)(1); *Whitaker v. Meachum,* 123 F.3d 714, 715 n. 1 (2d Cir.1997). AEDPA, however, adds an additional burden to the habeas petitioner, requiring "clear and convincing" evidence to effectively rebut the presumption of correctness. 28 U.S.C. § 2254(e)(1); *see Smith v. Sullivan,* 1 F.Supp.2d 206, 210 (W.D.N.Y.1998). "The touchstone for a reasonable determination is 'whether the determination is at least minimally consistent with the facts and circumstances of the case.'" *Sellan v. Kuhlman,* 63 F.Supp.2d 262, 267 (E.D.N.Y.1999), quoting, *Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir.), *cert. denied,* 522 U.S. 819, 118 S.Ct. 72, 139 L.Ed.2d 32 (1997).

Generally, a federal court may not consider the merits of a habeas petition unless the prisoner has first exhausted his state court remedies. 28 U.S.C. § 2254(b). Prior to the adoption of AEDPA, district courts were required to dismiss habeas petitions that contained claims that were both exhausted and unexhausted. *See Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Dismissal of such "mixed petitions" left the prisoner with the choice of either returning to the state court to fully exhaust all claims or to amend his petition to submit only unexhausted claims. *Id.*

■ AEDPA permits federal courts to deny, on the merits, habeas petitions that contain unexhausted claims. According to the statute, applications for writs of habeas corpus may be denied on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). This provision does not require the consideration and denial of unexhausted claims, but, instead, gives the district court discretion to handled unexhausted claims in this manner. *See Orraca v. Walker,* 1999 WL 427992 *6 (S.D.N.Y. June 18, 1999).

With the above-referenced AEDPA standards in mind, the court turns to consider Petitioner's claims.

## II. *Exhaustion*

At the outset, the court notes that the District Attorney has raised the issue of failure to exhaust with respect to Petitioner's fifth, seventh and eighth claims. Rather than dismissing these claims, the court chooses to exercise the discretion granted by AEDPA to, as discussed below, consider and deny these claims on the merits.

## III. *Petitioner's Claims*

### A. *Sentencing Claims (the first, second and third claims for relief)*

As noted above, Petitioner raises three claims in connection with his sentencing, two raise due process concerns and one raises a cruel and unusual punishment issue.

#### 1. *Due Process*

Petitioner claims that his sentencing violated his due process rights because he was sentenced vindictively in retaliation for exercising his right to trial and because the trial court improperly considered the Presentence Report when imposing sentence. Neither claim has merit.

##### i. *Vindictive Sentencing Based Upon Exercise of Right to Trial*

■ Petitioner's first due process challenge is based primarily on *North Carolina v. Pearce,* 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), wherein the Supreme Court held that due process is violated if "vindictiveness against a defen-

dant for having successfully attacked his first conviction" plays a part in the sentence he receives after a new trial. *Pearce* is inapposite here because that case involved a resentencing after a successful attack on a first conviction. Even if *Pearce* were to be applied to an initial sentencing, there is no sign of vindictive sentencing to support Petitioner's claim.

More on point in this case is the Supreme Court's decision in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), wherein it was made clear that a prosecutor may threaten the defendant with otherwise legitimate charges in order to induce the defendant to accept a plea bargain. This process merely presents "the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he [is] plainly subject to prosecution. . . ." *Id.* at 365, 98 S.Ct. 663; *see also United States v. Stanley*, 928 F.2d 575, 579 (2d Cir.1991). In these situations due process is satisfied as long as the defendant is free to accept or reject the prosecutor's offer. *Bordenkircher*, 434 U.S. at 365, 98 S.Ct. 663.

At the outset, the court notes no ground, under AEDPA, to disagree with the Appellate Division holding on this issue. Moreover, a review of the proceedings in this case makes it clear that Petitioner was made aware of the alternatives available to him and was free to accept or reject the prosecution plea offer. Warren was clearly advised of the offer as well as the possibility of enhanced sentencing if he were to lose at trial. Specifically, the prosecutor made a plea offer prior to the trial, of four to eight years, which the judge guaranteed to reduce to three to six years in order to conserve court time and expense. Petitioner refused this offer and decided to go ahead with the trial. He was thereafter convicted by a jury.

Following the conviction, the prosecutor offered another plea of seven to fifteen years, informing the defendant that he would seek the maximum penalty of twenty years to life at a persistent felony of-fender hearing. Despite warnings from the court and the prosecutor of the dangers of proceeding, Petitioner again refused to accept the plea. The court thereafter determined that Petitioner was a persistent felony offender and sentenced him to twenty years to life.

Having reviewed the record, the court finds nothing therein that indicates that the prosecutor did anything but engage in the legitimate process of plea bargaining in an effort to save the time, expense and uncertainty of a trial. It is clear that vindictiveness played no part in the sentencing recommendations of the prosecutor at the various stages of the trial. There is no presumption that the prosecutor's decision to seek an enhanced sentence is unjustified based merely on the fact a defendant chooses to go to trial and force the prosecutor's hand. *See Alabama v. Smith*, 490 U.S. 794, 802, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (upholding the "prosecutorial practice of threatening a defendant with increased charges if he does not plead guilty, and following through on that threat if the defendant insists on his right to stand trial. . . .").

ii. *Allegedly Improper Consideration of Presentence Report*

■ Petitioner's second due process claim relative to his sentencing argues that the trial court improperly considered the Presentence Report (referred to by Petitioner as the "probation" report), at his sentencing. According to Petitioner, the report incorrectly stated that he pled guilty to a Class D felony. Petitioner also raised here the alleged factual inaccuracies in the report that he raised before the Appellate Division in his direct appeal.

Petitioner's presentence report was prepared pursuant to N.Y.C.P.L. § 390.30. That statute requires that a pre-sentence investigation be performed and that a report of the investigation be submitted to the sentencing judge. At the investigative stage, information concerning the defen-

dant's criminal and personal history is gathered. It is then analyzed by the investigative agency, which prepares a report that provides the judge with information relevant to sentencing.

Ideally, presentence reports contain nothing but accurate information. In some situations, however, there can be an error in one or more aspects of the report and due process considerations require re-sentencing or reversal. For such drastic relief to be ordered, however, the error in the report must amount to "misinformation of a constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). In other words, the error must be so egregious, that if accurately presented to the sentencing judge a different result would have been reached.

Here, the trial court noted immediately the inaccuracy of the report with respect to the statement regarding the guilty plea. The information that petitioner claims is wrong (his family and work history) does not, in fact, appear to be inaccurate. Even assuming, however, the inaccuracy of this information, it is not, in light of the many undisputed criminal activities detailed in the report, of the constitutional magnitude required to result in reversal due to its consideration. Simply put, this information was not so important that the result would have been different had it been presented as Petitioner wished. Accordingly, the court rejects any due process claim based upon the alleged inaccuracy of the report.

The court similarly rejects any claim based upon any alleged denial of an opportunity to contest the facts set forth in the Presentence Report. It is well settled that a defendant must be given an opportunity to contest facts contained in a report which he alleges are false and sentence may not be imposed based on a material misapprehension of fact. *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *Torres v. United States*, 140 F.3d 392, 404 (2d Cir.),

*cert. denied,* —— U.S. ——, 119 S.Ct. 595, 142 L.Ed.2d 537 (1998). However, even where there is an alleged factual inaccuracy contained in the report, the court need not resolve the dispute when the information is not relied on in arriving at a sentence. *United States v. Alvarado,* 891 F.2d 439, 445–46 (2d. Cir.1989), *vacated on other grounds,* 497 U.S. 543, 110 S.Ct. 2995, 111 L.Ed.2d 439 (1990).

Petitioner was given the opportunity to review the Presentence Report and refute it as well. Through counsel, Petitioner offered information he felt contrasted with what was alleged in the Presentence Report. Further, he sought to establish his good character based on two letters of reference and his work history. It is clear to this court that Petitioner was afforded due process with regard to the proceedings surrounding the Presentence Report. Even if the procedure had been deficient in affording Petitioner due process it would not require reversal. Importantly, the record indicates that the sentencing judge did not specifically consider these factors in his decision. Therefore, the court was not obligated to resolve the factual disputes raised by the Petitioner.

For all of the reasons referred to above, the court holds that the trial court's handling of the presentence phase of Petitioner's state court trial in no way deprived Petitioner of his right to due process of law.

### 2. *Constitutionality of Persistent Felony Offender Statute*

Petitioner's final habeas claim concerning his sentencing is that application of New York's Persistent Felony Offender statute violated his right to be free from cruel and unusual punishment as well as his right to due process of law. With respect to his due process challenge, Petitioner argues that the state law requirement that proof of a defendant's background be proven by only a preponderance

of the evidence, and the discretion granted the sentencing court, violate due process.

Enhanced sentencing for persistent offenders has long been held to be constitutional. *E.g., Graham v. West Virginia,* 224 U.S. 616, 623, 32 S.Ct. 583, 56 L.Ed. 917 (1912); *Moore v. Missouri,* 159 U.S. 673, 678–79, 16 S.Ct. 179, 40 L.Ed. 301 (1895); *see People v. Oliver,* 96 A.D.2d 1104, 1105, 467 N.Y.S.2d 76 (2d Dept.1983). Petitioner here takes issue with the statute's requirement that the prosecutor's burden of proof, with respect to the defendant's character and history, and the nature of his criminal conduct, is only a preponderance of the evidence. *See* Penal Law § 70.10 and Criminal Procedure Law § 400.20.

■ As noted by the Supreme Court in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), it is completely consistent with the requirements of due process to consider facts presented during the sentencing phase of a criminal trial pursuant to a preponderance of the evidence standard. *McMillan,* 477 U.S. at 90, 106 S.Ct. 2411. Thus, the use of this standard of proof, standing alone, does not violate the Constitution. *See also United States v. Underwood,* 932 F.2d 1049, 1052 (2d Cir.1991) (determination of sentencing factors under Federal Sentencing Guidelines may be proven by preponderance of the evidence standard).

■ Moreover, it is clear that Petitioner was afforded due process at his particular persistent felon hearing. The opportunity to present evidence was exercised by defense counsel who presented two letters from spiritual leaders as well as evidence of Petitioner's work history. In addition, Petitioner was given the chance to refute the validity of a 1972 conviction. The prosecution was required to obtain and introduce plea minutes to establish the facts surrounding this conviction. From these facts and a review of the state court proceedings, it is clear to the court that no aspect of the sentencing hearing violated Petitioner's right to due process of law.

■ Finally, the court rejects the claim that sentence imposed constituted the arbitrary imposition of cruel and unusual punishment. Under the requirements of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), a state is required to prevent an arbitrary and capricious imposition of sentence as this would constitute cruel and unusual punishment. The sentencing decision in this case was a rational decision in which both sides submitted evidence to aid the judge in reaching his conclusion. The record clearly indicates that Petitioner was convicted of two prior felonies. His long criminal history certainly allowed the sentencing judge the discretion to impose a sentence of twenty years to life. The court finds neither that the provision of discretion nor the exercise thereof constitutes cruel and unusual punishment and rejects Warren's challenge to the imposition of sentence based upon this ground.

B. *Effective Assistance of Counsel (the fourth, ninth and tenth claims for relief)*

1. *Effective Assistance of Trial Counsel*

Petitioner claims that he was denied effective assistance of counsel when the state trial court refused to replace the Legal Aid attorney upon Petitioner's request. It is also claimed that appointed counsel failed to represent Petitioner with the competence required by the Constitution.

i. *Failure to Appoint New Counsel*

■ While an indigent defendant is entitled to assigned counsel, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), he does not have the right to have counsel changed at will. The Sixth Amendment focuses on the protection of the "adversarial process, not … the accused's relationship with his lawyer as such." *Pizarro v. Bartlett,* 776 F.Supp.

815, 818 (S.D.N.Y.1991), quoting, *United States v. Cronic,* 466 U.S. 648, 657 n. 21, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). There is a right to an "effective advocate," but not the right to a "meaningful attorney-client relationship." *Id.* (citations omitted).

 To warrant appointment of new counsel during or on the eve of trial, unusual circumstances must exist, "such as a complete breakdown of communication or an irreconcilable conflict." *United States v. Schmidt,* 105 F.3d 82, 89 (2d Cir.), *cert. denied,* 522 U.S. 846, 118 S.Ct. 130, 139 L.Ed.2d 80 (1997). To warrant the assignment of new counsel during trial, a defendant must show "good cause, leading to an apparently unjust verdict." *McKee v. Harris,* 649 F.2d 927, 931 (2d Cir.1981), quoting, *United States v. Calabro,* 467 F.2d 973, 986 (2d Cir.1972). The decision of whether to appoint new counsel is properly left to the trial court and turns upon the facts of each case. *McKee,* 649 F.2d at 932. Although loss of trust is a factor used in assessing good cause, a defendant seeking new counsel must, nonetheless, provide a legitimate reason for the change of counsel. *Id.* Therefore, he is required to do more than merely assert the fact that he has no confidence in his Attorney. *Id.*

Prior to trial, the state court denied Petitioner's motion for appointment of new counsel on the ground that Petitioner could not allege any specific facts in support of his claim that a conflict had arisen between Petitioner and his Legal Aid attorney. The state court considered, and found specifically that Petitioner failed to show any good cause for removal of the Legal Aid attorney and appointment of new counsel. To the contrary, the state judge found that the Legal Aid attorney had acted competently in representing Warren and refused to remove the attorney from the case.

 Under AEDPA, where, as here, the state court makes a factual finding and considers the merits of a claim, the habeas petitioner faces the high burden of showing that: (1) the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law ..." or (2) the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Moreover, the habeas petitioner faces the burden of overcoming the presumption of correctness of state court findings of fact. *See* 28 U.S.C. § 2254(e)(1). A state court finding is presumptively correct if it is at least minimally consistent with the facts and circumstances of the case. *Sellan v. Kuhlman,* 63 F.Supp.2d 262, 267 (E.D.N.Y.1999), quoting, *Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir.), *cert. denied,* 522 U.S. 819, 118 S.Ct. 72, 139 L.Ed.2d 32 (1997).

 Applying these standards here, the court has no difficulty rejecting the claim that the failure to appoint new counsel violated Petitioner's Sixth Amendment right to counsel. The trial court's denial of Petitioner's request for new counsel was considered and affirmed as appropriate by the Appellate Division. This ruling is certainly consistent with the facts and circumstances of this case and involves no unreasonable application of Federal law. Accordingly, the court rejects the claims that the failure to appoint new counsel deprived Petitioner of his right to counsel.

### ii. *Competence of Representation*

To determine whether counsel has rendered ineffective assistance, the court looks to the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must establish that the representation fell below an objective standard of reasonableness. Then petitioner must show a reasonable probability that the result of the proceeding would have been different, if not for counsel's errors. *Id.* at 688–694, 104 S.Ct. 2052. There is a strong presumption that counsel acted

within "the wide range of professional assistance." *Id.* at 694, 104 S.Ct. 2052. The fact that counsel will not present certain issues or motions to the court, which defendant wishes to be raised, does not render his or her representation ineffective. *United States v. Nersesian,* 824 F.2d 1294, 1322 (2d Cir.1987) ("not every possible motion need be filed, but rather, only those having solid foundation").

 As discussed above, the state court rejected Petitioner's ineffective assistance of counsel claim. This court agrees fully with the state court determination and applying AEDPA standards, declines to disturb that finding. A review of the state court record reveals that the Legal Aid attorney submitted only the portions of Petitioner's *pro se* motion deemed to have legal merit and withheld those aspects of the motion that he found to be frivolous. There is no obligation to present every motion a client requests, therefore the attorney was well within his rights to pursue this course of action. *See Nersesian,* 824 F.2d at 1322.

Considering counsel's representation of Petitioner as a whole and, in particular, during the sentencing hearing, the court holds that there is nothing in the record that indicates that counsel acted outside the wide range of acceptable professional assistance. He conducted cross-examination, requested a chain of custody hearing, a *Sandoval* hearing, a *Wade* hearing, and contested discrepancies in the the Presentence Report. His decision not to put witnesses on the stand at the sentencing was proper in that it would not have altered the result as the judge was in possession of reference letters from two of the potential witnesses. It is clear that counsel fulfilled his obligation to his client and rendered the best assistance possible under the circumstances.

2. *Effective Assistance of Appellate Counsel*

 Effective assistance of appellate counsel is governed by standards simi-lar to those employed when assessing the competence of trial counsel. Appellate counsel has a duty to present the issues he feels present the strongest possibility of success, and not merely frivolous issues. *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). It is counsel's job to ensure that weak arguments are eliminated, so as not to conceal the force of stronger arguments. *Id.* at 751–53, 103 S.Ct. 3308; *see also Abdurrahman v. Henderson,* 897 F.2d 71, 74 (2d Cir.1990).

Petitioner's ineffective assistance of appellate counsel argument was raised and denied in the context of his 1997 coram nobis application. Applying the AEPDA standards referred to above, this court agrees with the determination of the Appellate Division. Petitioner's appellate counsel submitted an extensive brief addressing twenty one issues under nine point headings in his efforts to overturn the conviction. Any argument omitted was clearly rejected due to weakness and in an effort to present the strongest arguments for review by the Appellate Division. It is clear to this court, as it was to the Appellate Division, that Petitioner received effective assistance of appellate counsel.

C. *Evidentiary Rulings (the fifth and eighth claims for relief)*

Petitioner's claims regarding allegedly improper evidentiary rulings challenge the propriety of the state court's pretrial *Sandoval* ruling as well as the court's trial rulings regarding the introduction of evidence of the cocaine purchased by the undercover officers and an inadvertent reference to Petitioner's warrant history. The court considers each claim below.

1. *Sandoval Rulings*

 As noted, habeas corpus relief is limited to those situations where there has been a violation of a constitutionally protected right. 28 U.S.C. § 2254(a); *Es-*

*telle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Generally, state court rulings on evidentiary matters are a mater of state law and do not raise constitutional issues. Such rulings are not reviewable by a habeas court unless the errors alleged are so prejudicial as to constitute fundamental unfairness. *Rosario v. Kuhlman,* 839 F.2d 918, 924–25 (2d Cir. 1988); *Lipinski v. New York,* 557 F.2d 289, 292 (2d Cir.1977); *Grant v. Demskie,* 75 F.Supp.2d 201, 207–08 (S.D.N.Y. 1999); *Jenkins v. Bara,* 663 F.Supp. 891, 899 (E.D.N.Y.1987). A habeas petitioner presenting an evidentiary ruling for federal review thus bears a very heavy burden of establishing the deprivation of a constitutional right. *Benitez v. Senkowski,* 1998 WL 668079 *4 (S.D.N.Y. September 17, 1998).

▮ Rulings made in the context of a *Sandoval* hearing are evidentiary decisions subject to the standards referred to above. *E.g., Senor v. Senkowski,* 1999 WL 689477 *12 (S.D.N.Y. August 31, 1999); *Benitez v. Senkowski,* 1998 WL 668079 *7 (S.D.N.Y. 1998); *Jenkins,* 663 F.Supp. at 899. When ruling on a *Sandoval* motion, the state court has broad discretion. The court balances the probative value of the conduct to the defendant's credibility against the prejudicial impact of the evidence. *Simmons v. Ross,* 965 F.Supp. 473, 480 (E.D.N.Y.1997); *see Sandoval,* 34 N.Y.2d at 374–75, 357 N.Y.S.2d 849, 314 N.E.2d 413. Importantly, where as here, a habeas petitioner did not testify at trial, the *Sandoval* ruling may not be assessed on habeas review because any such ruling would be wholly speculative. *Benitez v. Senkowski,* 1998 WL 668079 *7 (S.D.N.Y.1998); *see Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (trial court's *in limine* motion regarding prior convictions is not reviewable in habeas proceeding where petitioner failed to testify at trial); *United States v. Weichert,* 783 F.2d 23, 25 (2d Cir.1986).

▮ In view of the fact that Petitioner did not testify at trial, the *Sandoval* claim is not reviewable by this court and must be denied. *Accord Benitez v. Senkowski,* 1998 WL 668079 *7 (S.D.N.Y.1998); *Carroll v. Hoke,* 695 F.Supp. 1435, 1439–40 (E.D.N.Y.1988), *aff'd,* 880 F.2d 1318 (2d Cir.1989). Even if the claim were reviewable by this court, it would be without merit. The court has reviewed the transcript of the *Sandoval* hearing and the state court's rulings. In this case, the court properly exercised discretion in allowing the prosecution to use the prior convictions for impeachment purposes. The fact that certain activities occurred long before the hearing has little bearing on their admissibility for impeachment purposes as they were not isolated incidents. Petitioner had been arrested on numerous occasions following the early incidents and had exhibited a pattern of criminal behavior. In sum, the state court's *Sandoval* holdings were clearly within the discretion of the trial judge and in no way amounted to the fundamental unfairness necessary to address such evidentiary rulings on habeas review.

### 2. Trial Rulings

#### i. Chain of Custody Evidence

Applying the standards referred to above with respect to habeas review of state court evidentiary rulings, the court has no difficulty denying habeas relief based upon allegedly erroneous rulings regarding the chain of custody. The state court required extensive testimony on this issue and its ruling in no way affected the fundamental fairness of Petitioner's trial. Accordingly, this claim is rejected. *Accord Jenkins,* 663 F.Supp. at 899 (state court decisions regarding chain of custody are within the discretion of the state judge and should not be upset on habeas review).

#### ii. Reference to Warrant History

▮ At Petitioner's trial, one of the undercover officers made an inadvertent reference to the fact that Petitioner had a warrant out for his arrest. Immediately

thereafter, the judge issued a curative instruction, telling the jury to disregard what they had heard. Petitioner claims that the trial court's handling of this issue denied him of his right to due process of law.

When inadmissible evidence is presented at trial, the judge should correct the mistake by instructing the jury to disregard it. It is assumed that the jury will follow this instruction unless there is an overwhelming probability to the contrary. *Richardson v. Marsh*, 481 U.S. 200, 208, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). It must also be prejudicial to the defendant. *Greer v. Miller*, 483 U.S. 756, 766, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). "Trial errors that do not affect the substantial rights of the defendant are harmless and do not compel reversal of a criminal conviction." *United States v. Mussaleen*, 35 F.3d 692, 695 (2d Cir.1994). An error is harmless if it does not affect the jury's verdict. *Id.*

Here, the trial court properly issued a curative instruction. When considering Petitioner's trial as a whole and the nature of the evidence against him, it cannot be said that the state court's handling of this issue deprived Petitioner of his due process right to a fair trial. In any event, defense counsel neither objected to the instruction nor requested a mistrial. Under these circumstances, there is no ground for habeas relief.

D. *The Wade Ruling (the sixth claim for relief)*

The trial court held a *Wade* hearing to determine the admissibility of the undercover officers' identification of Petitioner. Petitioner challenges that holding on the ground that the identification violated his due process rights.

To withstand a due process challenge, an eyewitness identification must be accurate and reliable. Where suggestive identification procedures exist and create a likelihood of misidentification,

the eye witness identification procedure should be deemed unreliable and suppressed. *Dickerson v. Fogg*, 692 F.2d 238, 244 (2d Cir.1982). In an effort to prevent such suggestive procedures, the Supreme Court has fashioned a two part test. First, the court must decide whether the suspect's guilt was suggested by the identification process. Where it has been, the court will move to the second part of the test, and balance the suggestiveness against factors indicating a likelihood of mistaken identification. *Id.* These factors, enunciated in *Manson v. Brathwaite*, 432 U.S. 98, 110, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), include: (1) opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation, and (5) the time elapsed between the crime and confrontation. Where application of these factors suggest there was no mistake in identity and they outweigh the suggestiveness of the procedure, due process has not been violated.

The state court held a full hearing on the identification issue. Thus, under AEDPA, this court is bound by the state court determination absent Petitioner's satisfaction of the high burdens referred to above.

The court has reviewed the state court transcript and ruling regarding the *Wade* issues and finds no basis, under AEDPA, for disturbing that court's decision. All the factors have been satisfied in this case and they far outweigh any suggestiveness alleged by the Petitioner. At the time of the sale the officers, trained to pay specific attention to a suspect's characteristics, were within three feet of the suspect. They had the clear opportunity to view Petitioner.

The endurance of the initial encounter with Petitioner does not require a different result. *See Chavis v. Henderson*, 638 F.2d 534, 536–537 (2d Cir.1980) (holding a forty-five second encounter sufficient to make an

adequate identification). Moreover, while the sale, the arrest, and the subsequent identification did not occur on the same day, that factor does not render the identification unreliable. *See United States v. Stewart,* 770 F.Supp. 872, 877 (S.D.N.Y. 1991) (determining that seven weeks was not too extended period of time to render identification unreliable). Finally, both officers testified that once they saw the petitioner they knew it was the man that sold them the narcotics. For the foregoing reasons, the court rejects any habeas claim based upon an allegedly improper *Wade* ruling.

E. *Allegedly Improper Jury Instructions (the seventh claim for relief)*

Petitioner argues that two aspects of the trial court's jury charge were constitutionally infirm. First, it is argued that the court impermissibly shifted the burden of proof to the defense when giving the charge regarding the nature of the substance purchased by the undercover officers. Second, Petitioner finds fault with the trial court's missing witness charge.

■■■ For a jury charge to pass constitutional muster, it must guide the jury to the governing legal standard or properly inform the jury of the law. A charge that fails to accomplish this goal violates the requirements of due process of law. When reviewing the constitutionality of a jury charge, the court considers the charge as a whole and determines whether it violated a fundamental right. *Bradford v. Keane* 1996 WL 361593*16 (E.D.N.Y. 1996). It is not sufficient to allege merely that the charge is "undesirable, erroneous, or even universally condemned." *Id.,* quoting, *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). An erroneous jury charge must violate a constitutional right to require a conviction to be overturned on habeas review. *Id.; Bacchi v. Senkowski:* 884 F.Supp. 724, 732 (E.D.N.Y.1995), *aff'd,* 101 F.3d 683 (2d Cir. 1996).

■■ This court finds that in viewing the charge as a whole, the jury was properly instructed as to the governing legal standards. The court has reviewed the charge regarding the nature of the substance purchased by the officers. That charge states clearly that it was the prosecution burden to prove that the substance purchased by the officers was cocaine. There is simply no contrary interpretation of the charge. Because, in the court's view, the jury could not have misinterpreted the court's instructions regarding the burden of proof, any habeas challenge based upon the instruction regarding the nature of the substance purchased is rejected.

The court reaches the same result with respect to the trial court's missing witness charge. The trial court properly charged the jury regarding findings they could make with respect to the prosecution's failure to produce witnesses other than those produced. The court has reviewed the charged and finds no constitutional infirmity therein. Even if there were something inappropriate about that charge, the court cannot say, in view of the charge as a whole and the evidence of Petitioner's guilt, that any error in the missing witness charge rises to the level of a due process violation.

*CONCLUSION*

For the reasons set forth above, the request for a writ of habeas corpus is denied. The Clerk of the Court is directed to close this case.

SO ORDERED